IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Robert Johnson and Mary L. Johnson, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | C/A No. 3:13-789-CMC |
| v. ) | |
| ) | **OPINION AND ORDER** |
| ) | **ON MOTION TO DISMISS** |
| American Towers, LLC, Farmers ) | |
| Telephone Cooperative, Inc., Cellco ) | |
| Telephone Company of the Southeast, LLC, ) | |
| Cellco Partnership d/b/a Verizon Wireless, ) | |
| Sprint Cellular Company of South Carolina, ) | |
| Sprint Communications Company, L.P., ) | |
| Alltell Communications, LLC, Alltell ) | |
| Communications, Inc., Alltell Mobile ) | |
| Communications of South Carolina, Inc., ) | |
| T-Mobile USA Tower LLC, T-Mobile ) | |
| USA, Inc., AT&T Inc., AT&T Mobility ) | |
| LLC, AT&T Mobility Services, LLC, ) | |
| Verizon Wireless LLC, Verizon Wireless ) | |
| Service LLC, Verizon Wireless of the East, ) | |
| L.P., Tracfone Wireless, Inc., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This matter is before the court on Defendants' joint motion to dismiss, filed May 8, 2013. Dkt. No. 38. Defendants argue, *inter alia,* that they are all entitled to dismissal because Plaintiffs' sole claim, a state-law negligence claim: (1) is preempted by federal law; (2) fails for lack of a legally cognizable state-law duty; and (3) is inadequately pleaded. Specific Defendants (and categories of Defendants) advance additional grounds for dismissal. In the alternative, all Defendants seek to strike certain allegations and to require a more definite statement of the claim.

For the reasons set forth below, the court grants Defendants' motion to dismiss on several grounds. The court does not reach the remaining arguments for dismissal or the request for alternative relief.

## BACKGROUND

Through this action, Plaintiffs Robert Johnson and Mary L. Johnson (collectively "Johnsons"), seek recovery for injuries they suffered as a result of a shooting incident at the Johnsons' home on March 5, 2010. Complaint ¶ 8. According to the Complaint, an assailant broke into the Johnsons' home and shot Robert Johnson, who was then a Captain at the Lee Correctional Institution, six times in the chest and stomach. *Id.* ¶¶ 5, 8. Mary Johnson, Robert Johnson's wife, was present and observed the assault. *Id.* ¶ 8. The Johnsons allege that the shooting occurred because "an inmate at the prison using a cellphone ordered a co-conspirator outside of the prison to kill Captain Johnson." *Id.* ¶ 7.

The Johnsons filed this action in the Court of Common Pleas, Lee County, South Carolina, on February 13, 2013. They assert a single, state-law negligence claim against eighteen Defendants. Four Defendants are identified as entities that own wireless communication towers used by one or more of the other Defendants to provide wireless service that reaches Lee Correctional Institution. *Id.* ¶ 1. The remaining fourteen Defendants are identified as entities which provide wireless service that reaches Lee Correctional Institution. *Id.* ¶ 2. The Johnsons maintain that all Defendants are liable for injuries each of them suffered as a result of the assault on Robert Johnson because Defendants "were aware and realized prior to March 5, 2010, that they were creating an unreasonable risk of harm to others as a result of allowing their cellphone signals to be received within the

confines of the prison and be emitted and received from the prison[.]" *Id.* ¶ 9.

The Johnsons maintain that Defendants breached applicable duties of due care by the following actions or inactions:

a) In owning, occupying, and operating cell towers which allowed illegal cellphone activity;

b) In owning, occupying, and operating cell towers when they knew that the illegal use of cellphones in the prison was causing injury to persons outside of the prison;

c) In providing cellphone signals and service to an area where the Defendants knew criminal activity was occurring while having the ability to block the illegal use of cellphones; and

[d]) In failing to exercise reasonable care under the circumstance[s].

*Id.* ¶ 12.

Defendants removed the action to this court on March 25, 2013.[1] The Johnsons moved to remand on April 15, 2013, arguing the court lacked subject matter jurisdiction. Dkt. No. 18. By order entered June 7, 2013, the court denied the Johnsons' motion to remand, finding subject matter jurisdiction both because the Johnsons' negligence claim was completely preempted by federal law and because the only non-diverse Defendants were fraudulently joined. Dkt. No. 56. The finding of fraudulent joinder rested, in part, on a preemption defense.

## STANDARD

A motion under Federal Rule of Civil Procedure 12(b)(6) should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that the plaintiffs

---

[1] The notice of removal was filed by a group of five Defendants, self-described as the "Verizon Wireless Defendants," with the consent of the remaining Defendants. Dkt. No. 1 at 1, 12 (¶ 57).

cannot prove any set of facts in support of their claims that entitles them to relief. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Although the court must take the facts in the light most favorable to the plaintiffs, it "need not accept the legal conclusions [the plaintiffs would draw] from the facts." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). The court may also disregard any "unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

The Rule 12(b)(6) standard has often been expressed as precluding dismissal unless it is certain that the plaintiffs are not entitled to relief under any legal theory that plausibly could be suggested by the facts alleged. *See Mylan Labs., Inc. v. Markari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Nonetheless, the plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (quoted in *Giarratano*, 521 F.3d at 302).

Thus, in applying Rule 12(b)(6), the court also applies the relevant pleading standard. Despite the liberal pleading standard of Rule 8, the plaintiffs in any civil action must include more than mere conclusory statements in support of their claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (court need only accept as true the complaint's *factual* allegations, not its legal conclusions); *see also Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Robertson v. Sea Pines Real Estate Companies, Inc.*, 679 F.3d 278 (4th Cir. 2012) for proposition plaintiffs need not forecast *evidence* sufficient to prove the elements of a claim, but must allege sufficient *facts* to establish those elements).

**DISCUSSION**

**I.     Preemption**

Defendants argue that the Johnsons' negligence claim is preempted by federal law for two reasons: first, because it is expressly preempted by 47 U.S.C. § 332(c)(3)(A); and, second, because

the claim presumes the existence of a duty that would be in conflict with federal law. Dkt. No. 38-1 at 19-25.[2] These are two of the three means by which state law may be preempted: express preemption; conflict preemption; and field preemption. *See Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 322 (4th Cir. 2012) (noting claims may be preempted by express declaration of congressional intent, by actual conflict with federal law, or because Congress so occupied the field that there is no room for state supplementation). For reasons explained below, the court finds the Johnsons' claim barred by both express and conflict preemption.[3]

**Express Preemption.** Defendants' express preemption argument rests predominantly but not exclusively on 47 U.S.C. § 332(c)(3)(A). The critical portion of this section reads as follows: "no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services." 47 U.S.C. § 332(c)(3)(A). Thus, Section 332(c)(3)(A) includes both an express preemption clause (applicable to regulation of entry into the market and rates charged) and a savings clause (which allows states to regulate "other terms and conditions").

---

[2] Page number references to documents filed on the court's electronic case filing ("ECF") system refer to the page number reflected on the ECF header, not the document's internal numbering. While the numbers often correspond, they do not in all cases, as is true with Defendants' memorandum in support of dismissal (due to its inclusion of various tables). Dkt. No. 38-1.

[3] The Johnsons, at certain points, incorrectly characterize Defendants' preemption argument as based on field preemption and complete preemption. Dkt. No. 50 at 4-5. Defendants do not rely on either theory in their motion to dismiss. Defendants did, however, rely on the doctrine of complete preemption (based, in part, on an underlying express preemption argument) in removing this action and opposing the Johnsons' motion to remand. *See generally* Dkt. No. 56 at 7 (discussing, *inter alia*, *Beneficial National Bank v. Anderson*, 539 U.S. 1 (2003), which sets out the requirements for complete preemption).

Defendants also rely on related provisions of the Communications Act, which provide that the federal government shall "maintain . . . control . . . over all the channels of radio transmission[,]" and confer authority on the Federal Communications Commission to grant licenses for wireless telephone service and "establish areas or zones to be served by" these license holders. Dkt. No. 38-1 at 20 (discussing 47 U.S.C. §§ 301, 303, 303(h)). While these provisions do not, themselves, include express preemption language, they do provide context that aids in understanding the intent of Section 332(c)(3)(A).

The court previously addressed the preemptive scope of Section 332(c)(3)(A) in its order denying the Johnsons' motion to remand. *See* Dkt. No. 56 at 4-8. There, the court considered Section 332(c)(3)(A) in deciding whether the Johnsons' negligence claim was not merely preempted but also displaced by federal law, concluding, in part, as follows:

> The Johnsons' claims . . . relate directly to Defendants' activities "in connection with" providing wireless service. This is because the Johnsons may only succeed by establishing that Defendants had a duty not to provide or facilitate wireless service to or from a particular area (or, as to some Defendants, by establishing that they had a duty to block such service).

Dkt. No. 56 at 7.[4]

---

[4] In the order denying the Johnsons' motion to remand, this court distinguished a number of cases on which the Johnsons relied in arguing that their claim fell within the savings clause of Section 332(c)(3)(A). Dkt. No. 56 at 5. The cited cases were distinguished based on the subject matter of the claims: challenges to billing or marketing practices or to the safety of wireless *devices*. None of the cases raised challenges relating to the wireless *service* itself. The additional cases cited by the Johnsons in opposing dismissal are distinguishable for the same reason. For example, although they did not address *Pinney v. Nokia, Inc.*, 402 F.3d 430 (4th Cir. 2005), in support of remand, the Johnsons now argue it is dispositive. *See* Dkt. No. 50 at 4-5 (arguing that *Pinney* "resolved" the preemption issue before this court). As explained in the prior order, however,

> [t]he Johnsons' claims, in contrast to those in *Pinney*, relate directly to Defendants' activities "in connection with" providing wireless service. This is because the Johnsons may only succeed by establishing that Defendants had a duty not to provide

In other words, to succeed on their claim, the Johnsons must establish that Defendants owed them a duty under state law to deny service to or from the prison (or to block such service) despite having a federal license to serve a larger area that encompassed the prison. This would impose state law limitations on the wireless service provided. That is, it would involve the state (through a jury verdict applying state common law) in controlling the "channels of radio transmission" and regulating the "areas or zones to be served" by wireless providers. *See* 47 U.S.C. §§ 301, 303 (vesting responsibility for such control and regulation in the FCC). The Johnsons' claim would, consequently, run afoul of the express preemption clause of Section 332, which provides that: "no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service." *See generally Pinney*, 402 F.3d at 456 (noting that "for state law to constitute a barrier to entry, it must, at a minimum, obstruct or burden a wireless service provider's ability to provide a network of wireless service coverage"). It follows that the Johnsons' state-law negligence claim is expressly preempted by federal law.

**Conflict Preemption.** Defendants also argue that the Johnsons' claim is barred by conflict preemption. Conflict preemption applies "'when compliance with both federal and state regulations is a physical impossibility, or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Pinney*, 402 F.3d at 457.

Defendants' conflict preemption argument rests on the conflict between the Johnsons' theory of liability, that Defendants had a duty to block calls to or from the prison, and federal statutory prohibitions on interfering with wireless signals. *Compare* Complaint ¶ 10 (alleging Defendants

---

or facilitate wireless service to or from a particular area (or, as to some Defendants, by establishing that they had a duty to block such service).
Dkt. No. 56 at 6-7.

breached a duty of care because they failed to take "available measures to block" wireless signals from the confines of the prison) *with* 47 U.S.C. § 333 ("No person shall willfully or maliciously interfere with or cause interference to any radio communications of any station licensed or authorized by or under this chapter or operated by the United States Government.").[5]

As Defendants note, Section 333 has repeatedly been interpreted by the FCC as prohibiting any jamming of wireless telephone signals, even by prison officials seeking authority to jam signals because of concerns such as those raised in this case. *See* Dkt. No. 38-1 at 6-7, nn. 5-8 (and referenced documents filed as attachments in Dkt. No. 52). The FCC recently addressed possible alternatives to combat the underlying problem in a Notice of Proposed Rulemaking issued May 1, 2013. *See* Dkt. No. 52-15 (Notice of Proposed Rulemaking, *Promoting Technological Solutions to Combat Contraband Wireless Device Use in Correctional Facilities*, GN Docket No. 13-111 *et al.*, FCC 13-58, ¶¶ 19, 77 ("Contraband Wireless Device NPRM"), *available at* http://transition.fcc.gov/Daily_Releases/Daily_Business/2013/db0502/ FCC-13-58A1.pdf); *id.* at 12-13 (defining what is meant by jamming and noting the prohibition on sale of use of jamming devices except for limited sale to or use by the Federal Government).

This Notice ("FCC 13-58") indicates that the proposed alternatives, managed access and detection, would be "consistent with the statutory framework that has limited the use of jamming technologies." *Id.* at 9. The proposed alternatives do not involve either denial of all service or

---

[5] Although they argue that such relief would not be preempted, the Johnsons reaffirm the nature of the burden they seek to impose in their memorandum in opposition to dismissal as a duty to block (or "prevent") calls. Dkt. No. 50 at 7 ("The defendants contend that requiring [them] to block illegal calls from prison will create a barrier to their ability to provide a network of wireless coverage.").

blocking of all wireless signals to or from prison facilities. Instead, they involve technologies which allow for the identification of and denial of service to contraband *devices*. *See, e.g.,* FCC 13-58 at 8-13 (explaining differences between managed access systems, detection systems, and prohibited jamming). Even implementation of the managed access systems addressed in FCC 13-58 requires FCC approval. *See id.* at 9 ¶ 15 (noting that (1) "[a] correctional facility or third party at a correctional facility may operate a managed access system *if authorized by the Commission*" and (2) various prison facilities in multiple states had been authorized to and had conducted *trials* of managed access systems) (emphasis added). The very purpose of FCC 13-58 is to propose rules which would "remove barriers to the deployment and viability of existing and future technologies used to combat contraband wireless devices." *Id.* at 3 ¶ 1.

In sum, the FCC's position, as expressed in recently issued FCC 13-58, is consistent with prior FCC interpretations of Section 333 as precluding jamming or blocking of all signals to an area (as opposed to denial of service to individual devices), even when that area is a prison where wireless phones are known to be misused. *See generally* Dkt. No. 52-12 (February 18, 2009 letter denying prison system's request to use jamming equipment). Nothing in FCC 13-58 suggests the FCC would approve (much less automatically allow) a wireless provider or tower owner to block all service to a specified area such as a prison, which is effectively the duty the Johnsons seek to impose on Defendants. Instead, it refers to alternative technologies which might address the problem, which are described as experimental and which require special authorization from the FCC. This FCC Notice, therefore, confirms both that imposing any duty to block calls would be in conflict with federal law and that alternatives to achieve the same result remain subject to FCC control. Thus, even if the Johnsons' complaint sought to impose some duty other than blocking, their claim would

be subject to conflict preemption.[6]

Therefore, to the extent the Johnsons argue that any Defendant had a duty to block or jam wireless telephone signals, their claim fails as a matter of law because blocking wireless signals is expressly prohibited by federal law. *See, e.g.*, 47 U.S.C. § 333. Any contrary state law requirement, whether imposed by state statute, regulation, or based on the verdict of a jury applying state common law, would be preempted as in conflict with federal law.

## II.     Absence of State Law Duty

Even without federal preemption, the Johnsons' claim would fail for want of a cognizable duty under South Carolina law. In essence, the Johnsons seek to impose a duty on Defendants to deny wireless service to a small, specified geographic area due to the heightened potential that such service will be used to facilitate criminal activity. Whether such a duty may be recognized is an issue of law for the court. *Hendricks v. Clemson Univ.*, 578 S.E.2d 711, 714 (S.C. 2003) (internal quotation marks omitted). "An affirmative legal duty exists only if created by statute, contract,

---

[6] The Johnsons refer to managed access systems (for the first time) in their memorandum in opposition to dismissal, presumably in response to the recent issuance of FCC 13-58. Even if the Johnsons' Complaint could be construed to allege a breach of a duty to implement such a system, the claim would fail because allowing imposition of a state-law duty to impose such a limitation would constitute state regulation of a condition of market entry. In any event, FCC 13-58 suggests that, where these systems have been approved, the initiating party has been the prison, not a wireless provider, and implementation has required leasing of specialized equipment as well as special authorization by the FCC. FCC 13-58 at 6 ("The Commission has granted special temporary authorization and experimental special temporary authorizations to allow testing of managed access technologies, which utilize wireless base stations located within a correctional facility to capture and block transmissions to or from unauthorized devices."); *id.* (noting that the Commission had approved leases of related equipment for placement at a number of prisons including Lieber Correctional Institution in Ridgeville, South Carolina); *id.* at 9 ¶ 14 ("Managed access systems are micro-cellular, private networks that analyze transmissions to and from wireless devices to determine whether the device is authorized . . . . Managed access systems utilize base stations that are optimized to capture all . . . communications within the system coverage area, which would be a correctional facility in the instant case.") (internal footnote omitted).

relationship, status, property interest, or some other special circumstance." *Id*. Without such a duty, there is no actionable negligence. *See Bishop v. South Carolina Dep't of Mental Health*, 502 S.E.2d 78, 81 (S.C. 1998).

The Johnsons have failed to direct the court to any authority for imposing a duty on any Defendant either to deny or block service to a particular area simply because some users within that area might use the service for illegal purposes. Defendants, in contrast, have directed the court to substantial authority suggesting South Carolina courts would not recognize the existence of such a duty. *See* Dkt. No. 38-1 at 26-27 (addressing South Carolina cases finding mere foreseeability of injury insufficient to support imposition of a duty); *id*. at 27-30 (addressing out-of-state cases finding (1) manufacturers and sellers of wireless devices had no duty to warn users of the risks of driving while using the devices and (2) airline owed no duty to protect passenger from contract murder); *id*. at 30-31 (addressing South Carolina cases finding no duty to protect others from or warn them about potential criminal acts by third parties).

While none of Defendants' cases are on point, they suggest that South Carolina would not recognize a duty on the part of a service provider to deny or block service to a particular area simply because some individuals within that area might use the service for criminal purposes. Were such a duty recognized, it would have broad implications not only for wireless service providers (who might, for instance, be held liable to persons injured by drug users or dealers if the provider failed to block service to street corners where drug activity is known to occur), but also for other entities whose legal services or facilities might be used for criminal activity (*e.g.*, hotels, public transportation, restaurants, bars, and other locations where illegal activity might occur). This court concludes that South Carolina would not recognize any such duty on the part of wireless service

11

providers or the tower-owners who lease space to wireless service providers.[7]

### III.     Speculative Nature of the Complaint

Even without the legal difficulties addressed above, the Johnsons' claim would fail due to the speculative nature of their allegations. Most critically, the Johnsons fail to (1) identify the assailant or the inmate who allegedly ordered the assault; (2) provide any factual basis for their allegation that the order was given through a wireless phone; or, most critically, (3) allege any facts which would suggest that any specific Defendants' service or tower was used to transmit the call. *See* Complaint ¶ 7 ("Because of Captain Johnson's efforts to seize contraband, including cellphones used to facilitate criminal activities originating in the prison, an inmate at the prison using a cellphone ordered a co-conspirator outside the prison to kill Captain Johnson.").

The Johnsons' decision to cast so wide a net in naming Defendants confirms the absence of any factual basis for assuming a particular service (or equipment attached to a particular tower) was used by the unidentified inmate to convey an order to murder Robert Johnson (assuming the alleged order was conveyed by wireless phone). As noted above, the Johnsons sued four separate tower-owning Defendants and fourteen entities that allegedly provide service in the area.[8] The fourteen service providers represent multiple distinct "brands": Verizon, Sprint, Alltell, T-Mobile, AT&T and Tracfone. Beyond alleging that all Defendants either own towers which support service or provide service to an area which includes the Lee Correctional Institution, which merely raises the

---

[7] This conclusion is particularly strong as to the tower-owning Defendants given the added distance of their activity – leasing tower space to wireless service providers – from the illegal activity: a criminal assault that was allegedly made possible by illegal use of a contraband wireless phone that accessed services provided by wireless service providers who leased tower space from tower owners.

[8] Several Defendants deny that they provide service in the area.

*possibility* of involvement in transmission of a call from the prison, the Johnsons include no allegations that suggest a factual basis for their claim that any one of the Defendants provided or (by owning a tower) supported service actually used in the possible call from the unidentified inmate. Given the multiple different "brands" and towers covered by the eighteen Defendants, it is not plausible that all of them had some involvement in transmission of any order to harm Robert Johnson.

The Johnsons argue that greater specificity is not required because "[d]ismissing the complaint at this early stage would deprive [them] of discovery which may uncover information that is not currently available because it is the subject of a criminal investigation." Dkt. No. 50 at 13. Beyond noting that the alleged assailant (Sean Echols) has now been charged with the assault, the Johnsons point to no further facts which might be added to clarify the basis of their claims. Most critically, they point to no evidence that (1) a wireless phone was used or (2) the wireless service was provided or supported by any particular Defendant. Under these circumstances, the Johnsons' argument suggests only a desire to conduct a fishing expedition to determine if there is any factual basis for asserting claims against any Defendant and confirms the speculative nature of the claims as applied against any particular Defendant. This is not enough.

As the Court explained in *Iqbal*:

[T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the defendant-unlawfully-harmed- me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."*

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *A claim has*

> *facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.*

*Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 556, 557, 570) (citations omitted, emphasis added).

**IV. Defendants Who Have Not Appeared**

Four Defendants have not yet appeared: Cellco Telephone Company of the Southeast, LLC, Sprint Cellular Company of South Carolina, Alltel Communications, Inc., and Alltel Mobile Communications of South Carolina, Inc. The other Defendants, however, contend that three of these are not proper Defendants because Cellco Telephone Company of the Southeast, LLC was dissolved in 2003 (Dkt. No. 38-1 at 39); Alltel Mobile Communications of South Carolina, Inc. merged into Alltel Communications, Inc. in 1997 (*id.* at 52); and Alltel Communications, Inc. converted to LLC status in 2007 and is the same entity as named Defendant Alltel Communications, LLC (*id.*). Plaintiffs did not respond to Defendants' argument as to why these three parties should be dismissed. In light of Defendants' argument and the lack of Plaintiffs' response, the court dismisses this action against Cellco Telephone Company of the Southeast, LLC, Alltel Communications, Inc., and Alltel Mobile Communications of South Carolina, Inc. without prejudice.

No one has filed a motion to dismiss, or otherwise addressed, the remaining Defendant – Sprint Cellular Company of South Carolina – which has also failed to make an appearance. As a result, the court may not direct entry of judgment at this time. It is unclear whether that entity has been served or whether the entity exists. Plaintiffs are directed to file proof of service, or a stipulation of dismissal, of Sprint Cellular Company of South Carolina by June 25, 2013. If Plaintiffs have not filed proof of service by that deadline, the court will dismiss this action against

Sprint Cellular Company of South Carolina pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, and direct entry of judgment.

## V. Other Grounds

The court does not reach several grounds for dismissal argued by one or more Defendants. The court expresses no opinion as to the viability of these arguments.

## CONCLUSION

For the reasons set forth above, the court grants Defendants' motion to dismiss.[9] Dismissal for the reasons addressed in Sections I and II (preemption and absence of a state-law duty) is with prejudice. Dismissal for the alternative reason stated in Section III is without prejudice. Dismissal for the reasons stated in Section IV is without prejudice.

**IT IS SO ORDERED.**

                                                S/ Cameron McGowan Currie
                                                CAMERON MCGOWAN CURRIE
                                                UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
June 19, 2013

---

[9] This dismissal applies to all Defendants except Sprint Cellular Company of South Carolina. *See supra* Section IV.